## TEXAS & N. O. R. CO. v. CARTER.
### No. 10530.

Court of Civil Appeals of Texas.
San Antonio.

July 19, 1939.

Rehearing Granted in Part Sept. 13, 1939.
Second Rehearing Granted in Part
Nov. 29, 1939.

classes, which will be discussed separately in their order.

Appellee, Carter, operates a corn shelling plant at Cuero, in Dewitt County. It appears that he buys corn in the ear, in carload lots, at Texas points of origin, and has it shipped consigned to his order, at Cuero, where he shells it and then reships the shelled product to his customers at other points within the State.

In cases in the first class those customers reship, or reconsign, the shelled product to Marshall, where it is milled and the finished product reconsigned to points outside the State of Texas.

In cases in the second class the shelled corn is not milled in transit, but reshipped out of the State in the grain.

In both cases the original shipments were made on uniform bill of lading, shipper's order notify appellee, to Cuero, known as the "transit point." At Cuero appellee accepts the shipment and procures appellant to there "record" the freight-bill issued by its local agent. This process of recording the freight bill at the transit point is done at the instance of appellee to procure and preserve to successive transitors the right to claim and exercise shelling, milling and other transit privileges entitling the transitors to reduced through interstate rates authorized in tariffs issued by the Interstate Commerce Commission, and actually applied to the movements involved in this case.

From Cuero appellee ships a car of shelled corn corresponding with the original shipment, by virtue of the freight bill issued and "recorded" by appellant, consigned to Dallas, shipper's order notify appellee's customer there. The latter in like manner procures the recording of the freight bill and reconsigns the shipment to Sherman, whence the consignee reconsigns, in turn and by like processes, to an ultimate destination without this State.

By these processes the original shipment is moved through Cuero, after shelling, under the protection of the recorded freight bills, whereby shelling, milling in transit and reconsignment privileges, as well as the benefit of the through interstate freight rates, are preserved to the successive transitors.

In cases in the first class the same processes are pursued, except that the shelled corn is milled in transit at Marshall, under

Moursund, Ball, Moursund & Bergstrom, of San Antonio, for appellant.

Williams & Williams, of San Antonio, for appellee.

SMITH, Chief Justice.

This suit was brought by Carter against the Railroad Company to recover a refund of freight charges upon shipments of corn from points in Southwest Texas to Cuero, where the product was shelled and reshipped to other points in Texas, and in some cases there milled, but in all cases reconsigned to points in other states. The refund is provided for in certain cases by intrastate freight tariffs issued by the Railroad Commission of Texas.

Carter's right to recover the refund depends upon the sufficiency of his showing that the shipments were intrastate, rather than interstate, commerce. The trial court held with Carter and rendered judgment in his behalf for the amount of the refunds, plus attorney's fees allowed by statute in such cases. The Railroad Company has appealed.

The suit involves twenty-three shipments of corn. The shipments were in two

the milling-in-transit privilege procured by the same device of "recording" the freight bill at milling point.

Now, on tariff schedules issued by the Railroad Commission of Texas, as applicable to intrastate shipments, only, of course, the consignee at the shelling point (appellee) is entitled to an adjustment of the freight charges upon the basis of a twenty per cent reduction from the billed weight of the original shipment, and a proportionate refund of the normal freight charge. This refund rests upon an arbitrarily fixed reduction in the weight of the shipment earned by the elimination of the cob and husks from the corn in ear. On the other hand, it seems that under tariff schedules issued by the Interstate Commerce Commission, on interstate shipments only, of course, no such refund is allowed, but the through rate fixed in that schedule on such commodities must be collected by the carrier, which is punishable by heavy penalties for failure to make the collection. The carrier has no choice or discretion. It must collect the interstate rate upon interstate shipments, as interpreted by the Interstate Commerce Commission and the federal courts.

This brings us back to the question of whether the shipments involved were in intrastate commerce, or interstate commerce.

The material facts in the case seem to be settled by express stipulation or uncontroverted evidence, so that the controlling question becomes one of law. It appears that the commodity involved in these several shipments moved from point to point within this State, and thence to points without, in what is deemed in law continuous passage, broken only by stoppage for shelling and milling or diversion upon privileges procured and retained by shippers and consignees (through recordation of freight bills) in consideration of applicable through rates promulgated by the Interstate Commerce Commission.

The character of a shipment is determined not only by the intentions of the parties handling a commodity, but by actual facts and method of transportation. The shipper, or consignee, may intend and agree that a given commodity shall be shipped only between points in this State, and there taken out of transit. But if, upon arrival and delivery to him the consignee employs the carrier, on reconsignment upon the original bill of lading, and

registration of freight bills, to continue the movement to another point in the State, to obtain the benefit of further privileges incident to a through rate, saved to him by the process of recorded freight bills, and the consignee there in turn exercises the privilege and reconsigns to a point without the State, the shipment is one in interstate commerce. This is true, even though the successive consignees change the form of the commodity while in transit, as in this case, where the changes are made upon transit privileges provided in lawful schedules and procured by the consignee or shipper in consideration of the benefits of through rates promulgated by proper authority. Such is the case made here; and under the facts as we understand and have stated them, each shipment involved was one moving in interstate commerce upon a through rate promulgated by the Interstate Commerce Commission, which did not include, but excluded, the refund provided in intrastate shipments by tariffs promulgated by the Railroad Commission of Texas.

It appears, however, that certain of the shipments took a different course from those taking the interstate rate, and appellant admitted in its pleadings that in the excepted cases the intrastate tariffs applied, entitling appellee to the claimed refund in specific amounts, aggregating $38.49. A like admission was made by appellant as to two other shipments, but as no formula is submitted by either party by which the amounts of the refund in those instances may be computed, we are unable to apply a remedy therefor.

Accordingly, the judgment of the trial court will be reformed so as to award appellee recovery against appellant in the sum of $38.49, with six per cent interest thereon from date of judgment below, and as so reformed the judgment will be affirmed, at the cost of appellee. The original opinion will be withdrawn and this opinion substituted in lieu thereof.

Reformed and affirmed.

### On Appellee's Second Motion for Rehearing.

On further consideration, upon appellee's second motion for rehearing, we conclude that the case is not one for rendition, but should be remanded for all purposes and as to each of the shipments involved, in order that upon another trial satisfactory findings may be elicited to

show clearly which of the various shipments moved in interstate, and which in intrastate, commerce, under the general principles announced in the final opinion of this Court; findings of the amounts of refunds, if any, appellee may be entitled to on intrastate shipments, if any, and of the amounts of attorney's fees, if any, accruing thereon. It is further suggested that this is the character of case in which the trial judge should be requested to prepare and file written findings of fact and conclusions of law.

For the purposes of another trial the parties may withdraw from the files of this Court the original exhibits sent up with the record on appeal.

Appellee's motion will be granted in part, and the judgment reversed and the cause remanded.